

RECEIVED

JUN 2 9 2007

CLERK, U.S. DISTRICT COURT
ANCHORAGE, A.K.

In the District Court of the United States
For the District of Alaska

The United States of America,            )
                                          )
       Plaintiff,                         )
                                          ) Civil number _____
Vs.                                       ) case # 3:03-cr-00087-JKS-2
                                          )
Leroy L. Sbrusch,                         )
                                          )
       Defendant.                         )

**Leroy L. Sbrusch moves to vacate all the Court's orders in District of Alaska case # 3:03-cr-00087-JKS-2 – authority 28 U.S.C. § 2255 / notice to the Court of adjudicative facts under authority of F.R.E. _r_ 201(d) / memorandum of law / affidavit of Leroy L . Sbrusch / certificate of compliance**

### Brief in support

      The United States of America lacked standing to bring suit against Leroy L. Sbrusch.

**Notice to the Court of adjudicative facts – mandatory under authority of F.R.E. _r_ 201(d)**

      The record made in case # 3:03-cr-00087-JKS-2 does not verify which federal statute makes Leroy L. Sbrusch subject to and liable for a tax.[1]

      The record made in case # 3:03-cr-00087-JKS-2 does not verify that Leroy L. Sbrusch filed a procedurally proper tax return[2] or ratified a substitute return.

      The record made in case # 3:03-cr-00087-JKS-2 does not verify that Leroy L. Sbrusch was ever provided with a procedurally proper, lawful assessment.

      The record made in case # 3:03-cr-00087-JKS-2 does not verify that Leroy L. Sbrusch was in receipt of a statutory notice of deficiency.

---

[1] There is no such thing as a common law crime in federal courts. Absent citation of that certain statute which made Leroy L. Sbrusch subject to and liable for a tax, the proceedings were a legal impossibility – a federal criminal trial based on common law. It is wholly irrelevant what a jury may have determined.
[2] One required by law.

1

The records of the IRS are not trustworthy as required by the Federal Rules of Evidence.[3]

### Memorandum of law

The Federal Practice and Procedure § 3522 clearly establishes that once jurisdiction has been challenged, it is presumed that the court lacks jurisdiction unless or until the evidentiary sufficiency is provided and submitted to the record. The presumption is that a court lacks jurisdiction on a particular issue until it has been demonstrated that jurisdiction over the subject matter exists. The facts showing the existence of jurisdiction must be affirmatively in the record. If jurisdiction is challenged, the burden is on the party claiming jurisdiction to demonstrate that the court has jurisdiction over the subject matter. The limits upon jurisdiction must be neither disregarded nor evaded. The requirement to submit admissible evidence upon the record proving jurisdiction once jurisdiction is challenged is mandatory. The Supreme Court of the United States as well as lower courts have consistently reaffirmed the requirement that once jurisdiction is challenged those who claim jurisdiction must submit the evidence to prove the validity of the claim. See *Twining v. New Jersey,* 211 U.S. 78, 29 S.Ct. 14, 24 (1908), *Old Wayne Mutual Life Association v. McDonough,* 204 U.S. 8, 27 S. Ct. 236 (1907), *Scott v. McNeal,* 154 U.S. 34, 14, S.Ct. 1108 (1894), *Pennoyer v. Neff,* 95 U.S. 714, 733 (1877), *Hagen v. Lavine,* 415 U.S. 528, at 533, 39 L.ed. 577, 94 S.Ct/ 1372 (N.Y. March 28, 1974), *United States v. Roger,* 23 F. 658 (W.D. Ark. (1885), *State of Maine v. Thiboutot,* 448 U.S. 1, 100 S. Ct. 2502 (1980), *McNutt v. General Motors*

---

[3] The issue of trustworthiness of business records is not subject to waiver. Entering untrustworthy records is a fraud on the court.

*Acceptane Corp. of Indiana, Inc.* ,  298 U.S. 178, 80 L.Ed. 1135, 56 S.Ct. 780 (9136),

(jurisdiction may never be presumed), *Special Indemnity Fund v. Pruitt,*  205 F.2d. 306,

201 Okl. 308, (jurisdiction must be affirmatively shown),  *United States c. Chairito,*  69

F. Supp. 317 (D. Or. 1946) (jurisdiction cannot be presumed), *Standard v. Olesen,*  98

L.Ed. 1151, 74 S.Ct. 768 (1954),  *Garcia v .Dail,*  586 S.W. 2d. 524, at 528, (Tex. C.A.

1980) (lack of jurisdiction requires dismissal), *Burks v. Laskar,*  441 U.S. 471 (1979) and

Title 5 U.S.C. §§ 556 & 558(b).

The question of standing is not subject to waiver, . . . . "[W]e [the United States

Supreme Court] are required to address the issue even if the courts below have not passed

on it, and even if the parties fail to raise the issue before us. The federal courts are

under an independent obligation to examine their own jurisdiction, and standing is

perhaps the most important of [the jurisdictional] doctrines. " See *U.S. v Hayes* 515 U.S.

737, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995). See also *FW/PBS, Inc. v. Dallas*, 493 U.S.

215, at pages 230-231, 110 S.Ct 596, at pages 607-608, 107 L. Ed. 2d 603 (1990).

To have standing to bring suit, including criminal complaints, regarding the

revenue laws of the United States, in a federal district court, the United States must make

a record including:

(1).  Sworn testimony and authenticated documents to establish that the

defendant in the civil or criminal complaint was engaged in a taxable

activity found at 26 U.S.C. §§ 4001, 4003, 4041, 4042, 4051, 4064, 4071,

4081, 4091, 4121, 4131, 4161, 4181, 4251, 4261, 4271, 4371, 4461, 4481,

4611, 4661, 4671, 4681, 4682, 4701, 4911, 4912, 4940, 4941, 4942, 4943,

4944, 4945, 4948, 4951, 4952, 4953, 4955, 4958, 4971, 4972, 4974, 4975,

4976, 4977, 4978, 4979, 4979A, 4980, 4980B, 4980C, 4980D, 4980E,

4981, 4982, 4999, 5000, 5001, 5041, 5051, 5701, or 5881.

3

(2). A tax return for each year in question founded on one or more of the following statutes: 2 USC Sec. 1602, 5 USC APPENDIX Sec. 102, 5 USC Sec.1101, 5 USC Sec. 5568, 07 USC Sec. 1308-3a, 08 USC Sec.1183a, 11 USC Sec. 1106, 11 USC Sec.1129, 11 USC Sec. 1146, 11 USC Sec. 1231,11 USC Sec. 346,11 USC Sec. 505, 11 USC Sec. 507, 11 USC Sec. 728, 15 USC Sec. 683, 16 USC Sec. 1881a, 20 USC Sec.1070a-11, 20 USC Sec.1087e, 20 USC Sec. 1087ss, 20 USC Sec. 1091, 21 USC Sec. 379j, 26 USC APPENDIX Rule 310, 26 USC APPENDIX Rule 34, 26 USC Sec. 1402, 26 USC Sec. 1504, 26 USC Sec. 165, 26 USC Sec.168, 26 USC Sec. 2001, 26 USC Sec. 2032A, 26 USC Sec. 2035, 26 USC Sec. 2053, 26 USC Sec. 2055, 26 USC Sec. 2056, 26 USC Sec. 2106, 26 USC Sec. 2523, 26 USC Sec. 2632, 26 USC Sec. 2642, 26 USC Sec. 2654, 26 USC Sec. 2662, 26 USC Sec. 3121, 26 USC Sec. 404A, 26 USC Sec. 409, 26 USC Sec. 443, 26 USC Sec. 512, 26 USC Sec. 547, 26 USC Sec. 5703, 26 USC Sec. 6014, 26 USC Sec. 6018,26 USC Sec. 6060, 26 USC Sec. 6072, 26 USC Sec. 6075, 26 USC Sec. 6091, 26 USC Sec. 6103, 26 USC Sec. 6107, 26 USC Sec. 6109, 26 USC Sec. 6151, 26 USC Sec. 6161, 26 USC Sec. 6166, 26 USC Sec. 6212, 26 USC Sec. 6234, 26 USC Sec. 6420, 26 USC Sec. 6421, 26 USC Sec. 6503, 26 USC Sec. 6651, 26 USC Sec. 6694, 26 USC Sec. 6695, 26 USC Sec. 6702, 26 USC Sec. 7407, 26 USC Sec. 7427, 26 USC Sec. 7612, 26 USC Sec. 7701, 26 USC Sec. 7801,26 USC Sec. 7804, 26 USC Sec. 83, 26 USC Sec. 856, 26 USC Sec. 860, 26 USC Sec. 932, 26 USC Sec. 936, 28 USC APPENDIX Rule 9, 29 USC Sec. 1085a, 37 USC Sec. 558, 38 USC Sec. 1503, 42 USC Sec. 1395r, 42USC Sec. 1396g-1, 42 USC Sec. 405, 42 USC Sec. 653, 42 USC Sec. 664, 46 USC APPENDIX Sec. 1161, 48 USC Sec. 1801, and 50 USC Sec. 403w; <u>or in the alternative, a substitute return as provided for at</u>

**4.19.1.9.3.1 of the Internal Revenue Manuel. NOTE: substitute tax returns must be signed by the taxpayer.**

(3). A summary record of assessment referencing the character of the tax assessed as an impost, custom, duty, or excise tax.

-and-

(4). A notice of deficiency referencing one or more of the following statutes: 26 U.S.C. §§ 4001, 4003, 4041, 4042, 4051, 4064, 4071, 4081, 4091, 4121, 4131, 4161, 4181, 4251, 4261, 4271, 4371, 4461, 4481, 4611, 4661, 4671, 4681, 4682, 4701, 4911, 4912, 4940, 4941, 4942, 4943, 4944, 4945, 4948, 4951, 4952, 4953, 4955, 4958, 4971, 4972, 4974, 4975, 4976, 4977, 4978, 4979, 4979A, 4980, 4980B, 4980C, 4980D, 4980E, 4981, 4982, 4999, 5000, 5001, 5041, 5051, 5701, or 5881.

Before sums deposited in respect of a presumed taxpayer can be converted to use by the United States Treasury, the "taxpayer" must be assessed. The "code" articulates clearly what an "assessment" is and no form exists other than defined in the code as an assessment. The assessment process regarding federal income taxes is a matter controlled by statutes and regulations. In the 1954 and 1986 Internal Revenue Codes, §6201(a) authorizes the Secretary of the Treasury to make assessments. The method of recording such an administrative act is governed by §6203, which provides:

"The assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary. Upon request of the taxpayer, **the Secretary shall furnish the taxpayer a copy of the record of assessment**."

The specific tax regulation concerning the assessment process is 26 C.F.R., §301.6203-1, which reads in pertinent part:

"The district director and the director of the regional service center shall appoint one or more assessment officers. The assessment shall be made by an assessment officer signing the summary record of the assessment. The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment. The amount of the assessment shall, in the case of tax shown on a return by the taxpayer, be the amount so shown, and in all other cases the amount of the assessment shall be the amount shown on the supporting list or record."

In Internal Revenue Manual 5312(1), MT 5300-1 (11-15-85), this assessment process is further clarified:

"(1) The assessment is made by an assessment officer designated by the District Director or Service Center Director, as appropriate. The assessment officer signs a Form 23-C, Assessment Certificate, and this record, through supporting data, provides identification of the taxpayer by name and number, the taxable period, the nature of the tax and the amount assessed."

"(3) ... The assessment lists support the assessment certificate, which is used to summarize and record the official action of the assessment officer."

Thus, by the Service's own admission in its IR Manual, "[t]he assessment lists support the assessment certificate..." Pursuant to Fed.R.Evid. 801(d)(2)(D), this is a party admission that an assessment list must exist; see *United States v. Van Griffin*, 874 F.2d 634, 638 (9th Cir. 1989)(government manuals admissible as party admissions under Fed.R.Evid. 801(d)(2)(D)). There can be no dispute that the assessment list is the supporting record and is absolutely essential before a valid assessment is made. Further, the regulation contemplates a signed document. This is consistent with the supporting statute which provides that the taxpayer is entitled to a copy, which implies that a hard copy exists.

In addition to the above IRM provision which shows that Form 23-C is the assessment form, established decisional authority also shows that a tax assessment is made upon

6

Form 23-C. For example, in *Meyersdale Fuel Co. v. United States*, 44 F.2d 437, 443 (Ct.Cl. 1930), this form was mentioned:

"When the Commissioner of Internal Revenue makes an assessment of taxes he signs a list entitled 'Commissioner's assessment list' on Form 23C-1."

In *Brafman v. United States*, 384 F.2d 863 (5th Cir. 1967), there was also a demonstration of how tax assessments are executed upon Form 23-C. There, the government sought to attach liability for unpaid estate taxes to an heir of that estate under a transferee liability theory. But, Mrs. Brafman argued that she was not so liable because the assessment certificate relevant in that case was unsigned. In agreeing with that argument and holding the certificate at issue void, that court stated:

"The assessment certificate involved in this case, a photostated [sic] copy of which is in the record, is not signed by an assessment officer or by any other official...Since the certificate lacks the requisite signature, it cannot constitute a valid assessment," Id., at 865-66.

"Even the instructions on the reverse side of the assessment certificate, Form 23C, specify that the original form 'is to be transmitted to the District Director for signature, after which it will be returned to the Accounting Branch for permanent filing,'" Id., at 866.

"What is important in any case is that assessment is not automatic upon recordation; it requires the action of an assessment officer. That action, as defined explicitly in the Treasury Regulations, is the signing of the certificate," Id., at 867.

See also *Stallard v. United States*, 806 F.Supp. 152, 158 (W.D.Tex. 1992)("Defendant submitted a 'Form 23C' which it asserts is a summary record of assessment").

Several cases disclose the type of information which must be contained on a Form 23-C tax assessment record and its supporting list. For example, in *Ianelli v. Long*, 329 F.Supp. 1241, 1242 (W.D.Pa. 1971), that description of the various data was as follows:

"The procedure for assessment provides, *inter alia*, that the assessment officer shall sign the summary record of assessments made against any tax payer, that said action, through supporting records, shall provide identification of the tax payer, the character of the liability assessed, the taxable period as applicable, and the amount of the assessment. The date of the assessment is the date the summary record is signed by an assessment officer. 26 U.S.C.A. § 301.6203-1, Code of Federal Regulations. **Since this procedure was not followed, the assessment is void and the executions based thereon are invalid**."

In *Planned Investments, Inc. v. United States*, 881 F.2d 340, 343 (6th Cir. 1989), the court examined the requirements of 26 C.F.R., §301.6203-1, and stated:

"Section 6203 of Subchapter A provides that assessment be made by recording the liability in accordance with the regulations promulgated by the Secretary. 26 U.S.C. § 6203 ... Treasury regulations provide that the assessment be made by signing the summary record of assessment. 26 CFR § 301.6203-1. The summary record, through supporting documents, must contain the following:

(1) identification of the taxpayer;

(2) character of liability assessed;

(3) taxable period, if applicable;

(4) and amount of assessment."

Finally, the court in *Robinson v. United States*, 920 F.2d 1157, 1158 (3rd Cir. 1990), described the assessment process as:

"A duly designated official for the district or regional tax center signs the summary record of the assessment, which identifies the taxpayers, the type of tax owed, the taxable period and the amount of the assessment. 26 U.S.C. §6203; Treas. Reg. §301.6203-1."

**Therefore, from the above authority, the documents which are executed in making an assessment are clearly known. First, the assessment is made on a Form 23-C. This assessment form may apply either to a single individual or a group. The supporting documentation for a Form 23-C is the assessment lists, which must**

contain (1) the identification of the taxpayer; (2) character of liability assessed; (3) taxable period, if applicable; and (4) amount of the assessment. {If these documents do not exist, the absence proves that there has been no assessment and consequently, no tax collection activities may be pursued.}

**4.19.1.9.3.1  (01-01-2006)**
**Substitute for Return Procedures**

1. The examination begins when compliance check reveals filing delinquencies with potential for tax assessment.
2. Cases selected for SFR procedures should be controlled on IDRS with appropriate activity codes
3. Initial case folder will contain:
   A. Form 3198 stapled to inside left of case file folder.
   B. Compliance check information on fact of filing stapled to inside left under Form 3198.
   C. Labels (cross through any labels showing an incorrect address).
   D. Letters and information to be sent to the taxpayer (copy of 30/90 day letter.)
   E. Form 5600, Statutory Notice Worksheet, if case is going 90 days (include reports, current ENMOD and AMDIS prints).
   F. Form 5564, Notice of Deficiency Waiver.
   G. History sheet of actions.
   H. File copies of taxpayer letters and correspondence/telephone communications in date order with most current date on top.
   I. Examination workpapers.
   J. IDRS transcripts, research, IRP transcripts, any pertinent information.
   K. Form 6754, Classification Checklist.
   L. RTVUE, original return, amended return, or photocopy of return. m. Form 5546, Examination Return Charge out, or AMDIS print.
   M. Current TXMOD or IMFOLT
   N. AMDISA and ENMOD prints
   O. Copy of dummy SFR 1040. If push code 036 was used to establish TC 150, a dummy 1040 SFR is not required.
4. Substitutes for Returns (SFR) are established as follows:
   A. Prepare a dummy/SFR for each tax period.
   B. Use a current year tax form for each dummy/SFR.
   C. Cross out the tax period and write the SFR tax period in red using YYYYMM format.
   D. Using the non-filers name from Master File, enter a bracket in front of the last name in red.
   E. Use the non-filers correct social security number.
   F. Use either single or married filing separate filing Status for each dummy/SFR. For married filing separate, show the spouses name and SSN (if available). DO NOT use joint filing Status.
   G. Use the current date as the received date in MMDDYYYY format.
   H. Code the entity with a "P" code (partial entity) in red above the first name area. No address will be entered on dummy SFRs. (Forms 2363, Master File Entity Change, must be used to update addresses to Master File.)
   I. Allow exemptions for 65 or over, if applicable.
   J. Enter Return Processing Codes L (dummy return) and K (delinquent return statute cleared) to the right of line 23 on form 1040 in red.
   K. Write "Exam/SFR" across the top margin of the return in red.
   L. Enter Computer Condition Code (CCC) 3 in the filing Status block of the return. This generates a TC 570 to prevent prepaid credits from being refunded erroneously.

5. If push code 036 was used, the TC 150 DLN will establish automatically, and the above steps, in item #4, are not required. Use the following procedures to post an IMF SFR using AM 424 Push Code 036:
   A. Check master file using INOLES or IMFOLE to verify that the name line is for a period equal to or earlier than the tax period being input and that the name line is for a non-joint filing status
   B. If all name lines are for a subsequent tax period, prepare Form 2363 to change the name line to the earliest tax period and filing status being established.
   C. If the name line relating to the year being processed reflects filing status married filing joint, prepare form 2363 to change the name line to married filing separate or single. Make sure the filing status is equal to or prior to the earliest tax period being established.
   D. If the case is not on AIMS, establish the tax period by using Push Code 036 and CC AM424.
   E. If case is on AIMS, correct the Push code to 036 via CC AM424.
   F. There is no "Dummy SFR" to submit to Submission Processing when Push code 36 is used, in the top margin of Form 5344, write " Original Return – SFR."
   G. Place an IMFOLT in the case file in lieu of a tax return and notate "EXAM SFR" across the top margin of the IMFOLT.
6. Issue 30-day letter including report of Individual Income Tax Examination Changes.
7. Complete form 13496 with a live signature or computer facsimile signature when the 30 day letter is sent to the taxpayer. See IRM 20.1.2.1.4
8. Compute proposed tax as single or married filing separate status based on last return taxpayer filed.
9. Prepare Form 3198, Special Handling Notice, to advise AIMS/closing of any changes to the Master File name, address or filing status.
10. Returns submitted must have the taxpayer's signature.
11. All years for the same non-filer are kept together. Hand-carry the returns to the Receipt and Control Unit at the Campus. The Receipt and Control Unit process the returns within six days of receipt (12 days during peak periods) using the correct Document Locator Number (DLN) for dummy/SFRs.

The IRS has the burden of proof when income figures are derived from calculations based on unrelated taxpayers. See Internal Revenue Code found at section 7491(b)&(c).

## EXCERPTS FROM THE IRS AUDIT VERIFYING THAT THE IRS HAS NO TRUSTWORTHY RECORDS.[4]

---

[4] No subsequent audit performed by the GAO has found that the serious problems with IRS records such as IRS employees ability to access taxpayer records without detection and IRS employees ability to alter programs used to calculate tax bills without detection have been rectified.

10

**IRS Operations: Significant Challenges in Financial Management and Systems Modernization (Testimony, 03/06/96, GAO/T-AIMD-96-56).**
**GAO** discussed its: (1) fiscal year 1994 financial audit of the Internal Revenue Service (IRS); and (2) evaluation of the IRS Tax System Modernization (TSM) effort. **GAO noted that: (1) IRS did not use its revenue general ledger accounting system or its master files for its revenue reports, but relied on alternative sources such as Treasury schedules; (2) there were large discrepancies between information in IRS master files and Treasury data;** (3) **IRS did not properly document transactions or perform adequate analysis to ensure the reliability of the information it reported;** (4) **IRS was unable to reconcile its accounts** and could not substantiate some of its expenses; (5) IRS has initiated actions to correct some previously identified problems concerning computer security, payroll processing, funds reconciliation and monitoring, its budgetary and management control systems, and receipt balance accuracy; and (6) in spite of those actions, IRS lacks the strategic information management practices, software development Capability, systems architecture, and effective organization structure to manage and control system modernization.

**Before the Subcommittee on Government Management, Information and Technology, Committee on Government Reform and Oversight, House of Representatives**

For Release on Delivery Expected at 1:30 p.m. Wednesday, **March 6, 1996**

IRS OPERATIONS - SIGNIFICANT
CHALLENGES IN FINANCIAL MANAGEMENT
AND SYSTEMS MODERNIZATION

Statement of Gene L. Dodaro
Assistant Comptroller General
Accounting and Information Management Division

GAO/T-AIMD-96-56

Mr. Chairman and Members of the Subcommittee:

**I am pleased to be here today to discuss the results of our fiscal year 1994 financial audit of the Internal Revenue Service (IRS)**—our most recently completed audit--and our

11

reports evaluating IRS' Tax Systems Modernization (TSM) effort.  Last year, we issued two major assessments concerning IRS' guardianship of federal revenues and its ability to function efficiently in an increasingly high technology environment.  I am submitting these reports for the record: Financial Audit:  Examination of IRS' Fiscal Year 1994 Financial Statements (GAO/AIMD-95-141, August 4, 1995) and Tax Systems Modernization:  Management and Technical Weaknesses Must Be Corrected if Modernization Is To Succeed (AIMD-95-156, July 26, 1995).

**These reports (1)highlighted a number of serious technical and managerial problems that IRS must directly address** to make greater progress in both of these areas, (2)discussed actions being taken by IRS to strengthen its operations, and (3)presented numerous specific GAO recommendations for needed additional improvements.

For the last 3 fiscal years, **we have been unable to express an opinion on IRS' financial statements because of the pervasive nature of its financial management problems.  We were unable to express an opinion on IRS' financial statements for fiscal year 1994 for the following five primary reasons.**

**One, the amount of total revenue of $1.3 trillion reported in the financial statements could not be verified or reconciled to accounting records maintained for individual taxpayers in the aggregate.**

**Two, amounts reported for various types of taxes collected, for example, social security, income, and excise taxes, could also not be substantiated.**

**Three, we could not determine from our testing of IRS' gross and net accounts receivable estimates of over $69 billion and $35 billion, respectively, which include delinquent taxes, whether those estimates were reliable.**

The sections below discuss these issues in greater detail.

        ISSUES WITH REVENUE
------------------------------------------------------------
Chapter 0:1.1

**IRS' financial statement amounts for revenue, in total and by type of tax, were not derived from its revenue general**

ledger accounting system (RACS) or its master files of detailed individual taxpayer records. This is because RACS did not contain detailed information by type of tax, such as individual income tax or corporate tax, and the master file cannot summarize the taxpayer information needed to support the amounts identified in RACS. As a result, IRS relied on alternative sources, such as Treasury schedules, to obtain the summary total by type of tax needed for its financial statement presentation. IRS asserts that the Treasury amounts were derived from IRS records; however, neither IRS nor Treasury's records maintained any detailed information that we could test to verify the accuracy of these figures. As a result, to substantiate the Treasury figures, we attempted to reconcile IRS' master files--the only detailed records available of tax revenue collected-- with the Treasury records. We found that IRS' reported total of $1.3 trillion for revenue collections, which was taken from Treasury schedules, was $10.4 billion more than what was recorded in IRS' master files. Because IRS was unable to satisfactorily explain, and we could not determine the reasons for this difference, the full magnitude of the discrepancy remains uncertain.

*In addition to the difference in total revenues collected, we also found large discrepancies between information in IRS' master files and the Treasury data used for the various types of taxes reported in IRS' financial statements.* Some of the larger reported amounts for which IRS had insufficient support were $615 billion in individual taxes collected--this amount was $10.8 billion more than what was recorded in IRS' master files; $433 billion in social insurance taxes (FICA) collected--this amount was $5 billion less than what was recorded in IRS' master files; and $148 billion in corporate income taxes-- this amount was $6.6 billion more than what was recorded in IRS' master files. Thus, **IRS did not know and we could not determine if the reported amounts were correct. These discrepancies also further reduce our confidence in the accuracy of the amount of total revenues collected.**

Despite these problems, we were able to verify that IRS' reported total revenue collections of $1.3 trillion agreed with tax collection amounts deposited at the Department of the Treasury. However, we did find $239 million of tax collections recorded in IRS' RACS general ledger that were not included in reported tax collections derived from Treasury data.

**Inadequate internal controls, especially the lack of proper documentation of transactions, resulted in IRS continuing to report unsupported revenue information.** In some cases, IRS did not maintain documentation to support reported balances. **In other cases, it did not perform adequate analysis, such as reconciling taxpayer transactions to the general ledger, to ensure that reported information was reliable.**

We found several internal control problems that contributed to our inability to express an opinion on IRS' financial statements. To illustrate,

**IRS was unable to provide adequate documentation for 111 items, or 68 percent, in our random sample of 163 transactions from IRS' Non-master file. The non-master file is a database of taxpayer transactions that cannot be processed by the two main master files or are in need of close scrutiny by IRS personnel. These transactions relate to tax years dating as far back as the 1960s.** During fiscal year 1994, approximately 438,000 transactions valued at $7.3 billion were processed through the Non-master file. Because of the age of many of these cases, the documentation is believed to have been destroyed or lost.

**We sampled 4,374 statistically projectable transactions posted to taxpayer accounts. However, IRS was unable to provide adequate documentation, such as a tax return, for 524 transactions, or 12 percent. Because the documentation was lost, physically destroyed, or, by IRS policy, not maintained, some of the transactions supporting reported financial balances could not be substantiated, impairing IRS' ability to research any discrepancies that occur.**

<u>**An area that we identified where the lack of controls could increase the likelihood of loss of assets and possible fraud was in the reversal of refunds.**</u> Refunds are reversed when a check is undelivered to a taxpayer, an error is identified, or IRS stops the refund for further review. In many cases, these refunds are subsequently reissued. If the refund was not actually stopped by Treasury, the taxpayer may receive two refunds. In fiscal year 1994, IRS stopped 1.2 million refunds totaling $3.2 billion. For 183 of 244, or 75 percent of our sample of refund reversals, IRS was unable to provide support for who canceled the refund, why it was canceled, and whether Treasury stopped

the refund check.  Service center personnel informed us
that they could determine by a code whether the refund was
canceled by an internal IRS process or by the taxpayer,
but, as a policy, no authorization support was required,
nor did procedures exist requiring verification and
documentation that the related refund was not paid.

SOME IMPROVEMENTS MADE BUT OVERALL COMPUTER SYSTEMS
SECURITY REMAINED WEAK
Chapter 0:1.3

**In our prior year reports, we stated that IRS' computer
security environment was inadequate.  Our fiscal year 1994
audit found that IRS had made some progress in addressing
and initiating actions to resolve prior years' computer
security issues; however, some of the fundamental security
weaknesses we previously identified continued to exist in
fiscal year 1994.**

**These weaknesses were primarily IRS' employees' capacity to
make unauthorized transactions and activities without
detection.**  IRS has taken some actions to restrict account
access, review and monitor user profiles, provide an
automated tool to analyze computer usage, and install
security resources.  However, **we found that IRS still
lacked sufficient safeguards to prevent or detect
unauthorized browsing of taxpayer information and to
prevent staff from changing certain computer programs to
make unauthorized transactions without detection.**

Chapter 0:1.4

The deficiencies in financial management and internal
controls that I have discussed throughout this testimony
demonstrate the long-standing, pervasive nature of the
weaknesses in IRS' systems and operations--weaknesses which
contributed to our inability to express a more positive
opinion on IRS' financial statements.  **The erroneous
amounts discussed would not likely have been identified if
IRS' financial statements had not been subject to audit.**
Further, **the errors and unsubstantiated amounts highlighted
throughout this testimony suggest that information IRS
provides during the year is vulnerable to errors and
uncertainties as to its completeness and that reported
amounts may not be representative of IRS' actual
operations.**

15

IRS' software development capability was immature and weak
in key process areas.  For instance, (1) a disciplined
process to manage system requirements was not applied to
TSM systems, (2) a software tool for pButzly and tracking
development projects was inconsistently used, (3) **software
quality assurance functions were not well-defined or
consistently implemented,** (4) systems and acceptance
testing were neither well-defined nor required, and (5)
software configuration management\10 was incomplete.

IRS' systems architecture (including its security
architecture and data architecture), integration pButzly,
and system testing and test pButzly were incomplete.  For
example, (1) effective systems configuration management
practices were not established, (2) integration plans were
not developed and systems testing was uncoordinated, and
(3) standard software interfaces were not defined.

Tax Systems Modernization:  Management and Technical
Weaknesses Must Be Corrected if Modernization Is To Succeed
(GAO/AIMD-95-156, July 26, 1995).

A system architecture is an evolving description of an
approach to achieving a desired mission.  It describes (1)
all functional activities to be performed to achieve the
desired mission, (2) the system elements needed to perform
the functions, (3) the designation of performance levels of
those system elements, and (4) the technologic interfaces
and location of functions.

Configuration management involves selecting project
baseline items (for example, specifications),
systematically controlling these items and changes to them,
and recording their status and changes.

House of Representatives Report 104-291, October 25, 1995.

Chapter 0:3.1

"Mr. Chairman, that concludes my statement.  I would be happy to answer any questions

you or Members of the Subcommittee might have." - Gene L. Dodaro

Only a small number of those acts that can be considered fraud amount to "fraud upon the court," as that phrase is used in Rule 60(b). As the Court of Appeals for the Second Circuit accurately has noted: The meaning of the quoted phrase has not been much elucidated by decisions. Obviously it cannot be read to embrace any conduct of an adverse party of which the court disapproves; to do so would render meaningless the one-year limitation on motions under F.R.Civ.P. 60(b)(3). See 7 Moore, Federal Practice P 60.33 at 511 (1971 ed.). Professor Moore submits that the concept should "embrace only that species of fraud which does or attempts to, defile the court itself, or **is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication**."

**The court concluded that filing a false, sworn statement for the purpose of influencing a decision of the court constitutes a fraud upon the court.** See *Sutphin v. Tom Arnold Drilling Contractor, Inc.*, 17 S.W.3d 765, 17 S.W.3d 765 (Tex.App. 05/04/2000) [15].

This rule authorizing a court on motion to relieve a party or a legal representative from a final judgment or order for any reason justifying relief is to be liberally applied in a proper case, that is, in a case involving extraordinary circumstances or extreme hardship. U. S. v. Cirami, C.A.2 (N.Y.) 1977, 563 F.2d 26, on remand 92 F.R.D. 483. See, also, Marquette Corp. v. Priester, D.C.S.C.1964, 234 F.Supp. 799; U.S. v. $3,216.59 in U.S. Currency, D.C.S.C.1967, 41 F.R.D. 433. Subd. (b)(4) to (6) of this rule that court may relieve party from final judgment if it is void, if it is no longer equitable that

judgment should have prospective application or for any other reason justifying relief from operation of judgment, is to be liberally construed to carry out purpose of avoiding enforcement of erroneous judgment. Blanchard v. St. Paul Fire & Marine Ins. Co., C.A.5 (Fla.) 1965, 341 F.2d 351, certiorari denied 86 S.Ct. 66, 382 U.S. 829, 15 L.Ed.2d 73. This rule should be liberally construed for purpose of doing substantial justice. In re Hankins, N.D.Miss.1973, 367 F.Supp. 1370. See, also, Fackelman v. Bell, C.A.Ga.1977, 564 F.2d 734; Radack v. Norwegian America Line Agency, Inc., C.A.N.Y.1963, 318 F.2d 538; Triplett v. Azordegan, D.C.Iowa 1977, 478 F.Supp. 872; Tann v. Service Distributors, Inc., D.C.Pa.1972, 56 F.R.D. 593, affirmed 481 F.2d 1399. This rule establishing requirement for granting relief from a final judgment or order is to be given a liberal construction. U. S. v. One 1966 Chevrolet Pickup Truck, E.D.Tex.1972, 56 F.R.D. 459. 7. ---- Void judgment clause: Although this rule providing for relief from judgment is not substitute for appeal and finality of judgments ought not be disturbed except on very narrow grounds, liberal construction should be given this rule to the end that **judgments which are void or are vehicles of injustice not be left standing.** Brennan v. Midwestern United Life Ins. Co., C.A.7 (Ind.) 1971, 450 F.2d 999, certiorari denied 92 S.Ct. 957, 405 U.S. 921, 30 L.Ed.2d 792. A claim for relief from judgment on basis of "any other reason justifying relief from operation of the judgment" is cognizable where there is evidence of extraordinary circumstances or where there is evidence of extreme hardship or injustice, and, once extraordinary circumstances or hardship is found, this rule is to be liberally applied to accomplish justice. U. S. v. McDonald, N.D.Ill.1980, 86 F.R.D. 204. Attorney's motion for reconsideration on ground that court lacked jurisdiction to order him to pay court reporter could be entertained under rule governing

relief from judgment and was not subject to time constraints of rule governing motion to amend judgment. U.S. v. 789 Cases of Latex Surgeon Gloves, C.A.1 (Puerto Rico) 1993, 13 F.3d 12 <u>Void judgments are those rendered by a court which lacked jurisdiction, either of the subject matter or the parties</u>, *Wahl v. Round Valley Bank* 38 Ariz. 411, 300 P. 955 (1931); *Tube City Mining & Milling Co. v. Otterson,* 16 Ariz. 305, 146 P. 203 (1914); and *Milliken v. Meyer,* 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 2d 278 (1940). **<u>A void judgment which includes judgment entered by a court which lacks jurisdiction over the parties or the subject matter, or lacks inherent power to enter the particular judgment, or an order procured by fraud, can be attacked *at any time*, in any court, either directly or collaterally, provided that the party is properly before the court</u>**, *Long v. Shorebank Development Corp.,* 182 F.3d 548 ( C.A. 7 Ill. 1999). <u>A void judgment is one which, from its inception, was a complete nullity and without legal effect</u>, *Lubben v. Selevtive Service System Local Bd. No. 27,* 453 F.2d 645, 14 A.L.R. Fed. 298 (C.A. 1 Mass. 1972). A void judgment is one which from the beginning was complete nullity and without any legal effect, *Hobbs v. U.S. Office of Personnel Management,* 485 F.Supp. 456 (M.D. Fla. 1980). Void judgment is one that, from its inception, is complete nullity and without legal effect, *Holstein v. City of Chicago,* 803 F.Supp. 205, reconsideration denied 149 F.R.D. 147, affirmed 29 F.3d 1145 (N.D. Ill 1992). <u>Void judgment is one where court lacked personal or subject matter jurisdiction or entry of order violated due process,</u> U.S.C.A. Const. Amend. 5 – *Triad Energy Corp. v. McNell* 110 F.R.D. 382 (S.D.N.Y. 1986). **<u>Judgment is a void judgment if court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process</u>**, Fed. Rules Civ. Proc., *Rule*

*60(b)(4),* **28 U.S.C.A.; U.S.C.A. Const. Amend. 5** – *Klugh v. U.S.,* 620 F.Supp. 892 (D.S.C. 1985). A void judgment is one which, from its inception, was, was a complete nullity and without legal effect, *Rubin v. Johns,* 109 F.R.D. 174 (D. Virgin Islands 1985).

A void judgment is one which, from its inception, is and forever continues to be absolutely null, without legal efficacy, ineffectual to bind the parties or to support a right, of no legal force and effect whatever, and incapable of enforcement in any manner or to any degree – *Loyd v. Director, Dept. of Public Safety,* 480 So. 2d 577 (Ala. Civ. App. 1985). A judgment shown by evidence to be invalid for want of jurisdiction is a void judgment or at all events has all attributes of a void judgment, *City of Los Angeles v. Morgan,* 234 P.2d 319 (Cal.App. 2 Dist. 1951). Void judgment which is subject to collateral attack, is simulated judgment devoid of any potency because of jurisdictional defects, *Ward v. Terriere,* 386 P.2d 352 (Colo. 1963). A void judgment is a simulated judgment devoid of any potency because of jurisdictional defects only, in the court rendering it and defect of jurisdiction may relate to a party or parties, the subject matter, the cause of action, the question to be determined, or relief to be granted, *Davidson Chevrolet, Inc. v. City and County of Denver,* 330 P.2d 1116, certiorari denied 79 S.Ct. 609, 359 U.S. 926, 3 L.Ed. 2d 629 (Colo. 1958). **Void judgment is one entered by court without jurisdiction of parties or subject matter or that lacks inherent power to make or enter particular order involved and such a judgment *may be attacked at any time*,** either directly or collaterally, *People v. Wade,* 506 N.W.2d 954 (Ill. 1987). Void judgment may be defined as one in which rendering court lacked subject matter jurisdiction, lacked personal jurisdiction or acted in manner inconsistent with due process of law *Eckel v. MacNeal,* 628 N.E. 2d 741 (Ill. App. Dist. 1993). **Void judgment is one**

**entered by court without jurisdiction of parties or subject matter or that lacks inherent power to make or enter particular order involved;** *such judgment may be attacked at any time, either directly or collaterally* People v. Sales, 551 N.E.2d 1359 (Ill.App. 2 Dist. 1990). *Res judicata* consequences will not be applied to a void judgment which is one which, from its inception, is a complete nullity and without legal effect, *Allcock v. Allcock* 437 N.E. 2d 392 (Ill. App. 3 Dist. 1982). Void judgment is one which, from its inception is complete nullity and without legal effect *In re Marriage of Parks*, 630 N.E. 2d 509 (Ill.App. 5 Dist. 1994). Void judgment is one entered by court that lacks the inherent power to make or enter the particular order involved, and it may be attacked at any time, either directly or collaterally; such a judgment would be a nullity *People v. Rolland* 581 N.E.2d 907, (Ill.App. 4 Dist. 1991). Void judgment under federal law is one in which rendering court lacked subject matter jurisdiction over dispute or jurisdiction over parties, or acted in manner inconsistent with due process of law or otherwise acted unconstitutionally in entering judgment, U.S.C.A. Const. Amed. 5, *Hays v. Louisiana Dock Co., 452 n.e.2D* 1383 (Ill. App. 5 Dist. 1983). A void judgment has no effect whatsoever and is incapable of confirmation or ratification, *Lucas v. Estate of Stavos*, 609 N. E. 2d 1114, rehearing denied, and transfer denied (Ind. App. 1 dist. 1993). Void judgment is one that from its inception is a complete nullity and without legal effect *Stidham V. Whelchel,* 698 N.E.2d 1152 (Ind. 1998). Relief form void judgment is available when trial court lacked either personal or subject matter jurisdiction, *Dusenberry v. Dusenberry,* 625 N.E. 2d 458 (Ind.App. 1 Dist. 1993). Void judgment is one rendered by court which lacked personal or subject matter jurisdiction or acted in manner inconsistent with due process, U.S.C.A. Const. Amends. 5, 14 *Matter of*

21

*Marriage of Hampshire*, 869 P.2d 58 ( Kan. 1997). Judgment is void if court that rendered it lacked personal or subject matter jurisdiction; void judgment is nullity and may be vacated at any time, *Matter of Marriage of Welliver*, 869 P.2d 653 (Kan. 1994). A void judgment is one rendered by a court which lacked personal or subject matter jurisdiction or acted in a manner inconsistent with due process *In re Estate of Wells*, 983 P.2d 279, (Kan. App. 1999). Void judgment is one rendered in absence of jurisdiction over subject matter or parties 310 N.W. 2d 502, (Minn. 1981). A void judgment is one rendered in absence of jurisdiction over subject matter or parties, *Lange v. Johnson*, 204 N.W.2d 205 (Minn. 1973). <u>A void judgment is one which has merely semblance, without some essential element, as when court purporting to render is has no jurisdiction,</u> *Mills v. Richardson*, 81 S.E. 2d 409, (N.C. 1954). A void judgment is one which has a mere semblance, but is lacking in some of the essential elements which would authorize the court to proceed to judgment, *Henderson v. Henderson*, 59 S.E. 2d 227, (N.C. 1950). Void judgment is one entered by court without jurisdiction to enter such judgment, *State v. Blankenship* 675 N.E. 2d 1303, (Ohio App. 9 Dist. 1996). <u>**Void judgment, such as may be *vacated at any time* is one whose invalidity appears on face of judgment roll,**</u> *Graff v. Kelly*, 814 P.2d 489 (Okl. 1991). A void judgment is one that is void on face of judgment roll, *Capital Federal Savings Bank v. Bewley*, 795 P.2d 1051 (Okl. 1990). <u>Where condition of bail bond was that defendant would appear at present term of court, judgment forfeiting bond for defendant's bail to appear at subsequent term was a void judgment within rule that ***laches does not run against a void judgment***</u> *Com. V. Miller*, 150 A.2d 585 (Pa. Super. 1959). A void judgment is one in which the judgment is facially invalid because the court lacked jurisdiction or authority to render the judgment, *State v.*

*Richie,* 20 S.W.3d 624 (Tenn. 2000). Void judgment is one which shows upon face of record want of jurisdiction in court assuming to render judgment, and want of jurisdiction may be either of person, subject matter generally, particular question to be decided or relief assumed to be given, *State ex rel. Dawson v. Bomar,* 354 S.W. 2d 763, certiorari denied, (Tenn. 1962). A void judgment is one which shows upon face of record a want of jurisdiction in court assuming to render the judgment, *Underwood v. Brown,* 244 S.W. 2d 168 (Tenn. 1951). A void judgment is one which shows on face of record the want of jurisdiction in court assuming to render judgment, which want of jurisdiction may be either of the person, or of the subject matter generally, or of the particular question attempted to decided or relief assumed to be given, *Richardson v. Mitchell,* 237 S.W. 2d 577, (Tenn.Ct. App. 1950). <u>Void judgment is one which has no legal force or effect whatever, it is an absolute nullity, its invalidity may be asserted by any person whose rights are affected at any time and at any place and it need not be attacked directly but may be attacked collaterally whenever and wherever it is interposed,</u> *City of Lufkin v. McVicker,* 510 S.W. 2d 141 (Tex. Civ. App. – Beaumont 1973). A void judgment, insofar as it purports to be pronouncement of court, is an absolute nullity, *Thompson v. Thompson,* 238 S.W.2d 218 (Tex.Civ.App. – Waco 1951). <u>A void judgment is one that has been procured by extrinsic or collateral fraud,</u> or entered by court that did to have jurisdiction over subject matter or the parties, *Rook v. Rook,* 353 S.E. 2d 756, (Va. 1987). <u>A void judgment is a judgment, decree, or order entered by a court which lacks jurisdiction of the parties or of the subject matter, or which lacks the inherent power to make or enter the particular order involved,</u> *State ex rel. Turner v. Briggs*, 971 P.2d 581 (Wash. App. Div. 1999). <u>A void judgment or order is one that is entered by a court</u>

lacking jurisdiction over the parties or the subject matter, or lacking the inherent power to enter the particular order or judgment, or where the order was procured by fraud, *In re Adoption of E.L.,* 733 N.E.2d 846, (Ill.App. 1 Dist. 2000). Void judgments are those rendered by court which lacked jurisdiction, either of subject matter or parties, *Cockerham v. Zikratch,* 619 P.2d 739 (Ariz. 1980). Void judgments generally fall into two classifications, that is, judgments where there is want of jurisdiction of person or subject matter, and judgments procured through fraud, and such judgments may be attacked directly or collaterally, *Irving v. Rodriquez,* 169 N.E.2d 145, (Ill.app. 2 Dist. 1960). Invalidity need to appear on face of judgment alone that judgment or order may be said to be intrinsically void or void on its face, if lack of jurisdiction appears from the record, *Crockett Oil Co. v. Effie,* 374 S.W.2d 154 ( Mo.App. 1964). Decision is void on the face of the judgment roll when from four corners of that roll, it may be determined that at least one of three elements of jurisdiction was absent: (1) jurisdiction over parties, (2) jurisdiction over subject matter, or (3) jurisdictional power to pronounce particular judgment hat was rendered, *B & C Investments, Inc. v. F & M Nat. Bank & Trust,* 903 P.2d 339 (Okla. App. Div. 3, 1995). **Void order may be attacked, either directly or collaterally, *at any time*,** *In re Estate of Steinfield,* 630 N.E.2d 801, certiorari denied, See also *Steinfeld v. Hoddick,* 513 U.S. 809, (Ill. 1994). Void order which is one entered by court which lacks jurisdiction over parties or subject matter, or lacks inherent power to enter judgment, or order procured by fraud, can be attacked at any time, in any court, either directly or collaterally, provided that party is properly before court, *People ex rel. Brzica v. Village of Lake Barrington,* 644 N.E.2d 66 (Ill.App. 2 Dist. 1994). While voidable orders are readily appealable and must be attacked directly, void order may be

24

circumvented by collateral attack or remedied by mandamus, *Sanchez v. Hester,* 911 S.W.2d 173, (Tex.App. – Corpus Christi 1995). Arizona courts give great weight to federal courts' interpretations of Federal Rule of Civil Procedure governing motion for relief from judgment in interpreting identical text of Arizona Rule of Civil Procedure, *Estate of Page v. Litzenburg,* 852 P.2d 128, review denied (Ariz.App. Div. 1, 1998). **When rule providing for relief from void judgments is applicable, relief is not discretionary matter, but is mandatory,** *Orner v. Shalala,* 30 F.3d 1307, (Colo. 1994). Judgments entered where court lacked either subject matter or personal jurisdiction, or that were otherwise entered in violation of due process of law, must be set aside, *Jaffe and Asher v. Van Brunt,* S.D.N.Y.1994. 158 F.R.D. 278. A "void" judgment as we all know, grounds no rights, forms no defense to actions taken thereunder, and is vulnerable to any manner of collateral attack (thus here, by ). **No statute of limitations or repose runs on its holdings, the matters thought to be settled thereby are not res judicata, and years later, when the memories may have grown dim and rights long been regarded as vested, any disgruntled litigant may reopen the old wound and once more probe its depths. And it is then as though trial and adjudication had never been.** 10/13/58 *FRITTS v. KRUGH.* SUPREME COURT OF MICHIGAN, 92 N.W.2d 604, 354 Mich. 97. **On certiorari this Court may not review questions of fact.** *Brown v. Blanchard,* **39 Mich 790. It is not at liberty to determine disputed facts (** *Hyde v. Nelson,* **11 Mich 353), nor to review the weight of the evidence.** *Linn v. Roberts,* **15 Mich 443;** *Lynch v. People,* **16 Mich 472.** *Certiorari is an appropriate remedy to get rid of [({a void judgment one which there is no evidence to sustain.})]* *Lake Shore & Michigan Southern Railway Co. v. Hunt,* **39 Mich 469.**

25

*Impossibilium nulla obligation est* - There is no obligation to do the impossible.

Black's Law Dictionary at page 756.

### Affidavit

I, Leroy L. Sbrusch, of age and competent to testify, state as follows based on my own personal knowledge:

(1). On May 15th 2007, I voluntarily appeared a Evidentiary Hearing on Petition to Revoke Supervised Release.

(2). On May 15th 2007, James K. Singleton alleged that the judgment against me could never be challenged or words to that effect.

(3). On May 15th 2007, James K. Singleton threatened to send me to prison for life if I didn't comply with the law or words to that effect.

(4). On May 15th 2007, James K. Singleton refused to tell me the statute or statutes that I had to comply with or go to prison for life.

(5). In threatening me with life in prison for failure to comply with an unspecified statute, James K. Singleton has required that I do a thing which is impossible.

(6). As a result of the threats of James K. Singleton, I have been damaged financially, socially, and emotionally.

Leroy L. Sbrusch

STATE OF ALASKA

COUNTY OF Mat-Su

Before me, the undersigned, a Notary Public in and for said County and State on this 29 day of June, 2007, personally appeared Leroy Lewis Sbrusch to me known to be the identical person who executed the within and foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act.

Given under my hand and seal the day and year last above written.

My commission expires _____ Notary Public

OFFICIAL SEAL
Linda J. Lincoln
Notary Public-State of Alaska
My Comm. Expires 4-25-08

26

## Certificate of compliance

I, Leroy L. Sbrusch, certify that this is my first filing of a civil habeas. I further certify that I am filing this civil habeas in pursuit of justice and not for any improper purpose such as harassment or delay; after all, James K. Singleton refuses to identify the statute that he demands that I comply with as the "key to my freedom."

Leroy L. Sbrusch          date 6/29/07

## Certificate of mailing

I, Leroy L. Sbrusch, certify that I mailed a true and correct copy of the above and foregoing motion to vacate to: the U.S. Attorney's office at 222 West 7th Avenue, Anchorage, Alaska 99513.

Leroy L Sbrusch

Copies to:

Alberto R. Gonzales, Attorney General of the United States (or acting A.G.)
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

Congressman John Conyers, Jr.
2615 West Jefferson
Trenton, Michigan 48183

Associate Justice Stephen G. Breyer, Chair
Judicial Conduct and Disability Act Study Committee
Supreme Court of the United States
One First Street N.E.
Washington, D.C. 20543

Fred Hiatt
C/O The Washington Post
1150 15th Street N. W.
Washington, D.C. 20071